IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMARA SELF,  
        Plaintiff,

v.

COMMISSIONER, Social Security Administration,

        Defendant.

Civil No. 04-1079-HO

ORDER

Plaintiff filed this action for review of the final decision of the Commissioner denying her 1995 application for Supplemental Security Income Benefits.[1]

## Discussion

Plaintiff argues that the administrative law judge (ALJ) erred by (1) failing to find plaintiff disabled under Listing 12.05C of 20 C.F.R. Pt. 404, subpt. P, app. 1, (2) rejecting

---

[1] This is the second proceeding for judicial review related to plaintiff's application. The first proceeding resulted in a stipulated remand for further proceedings. (Tr. 253-54).

plaintiff's testimony, (3) rejecting plaintiff's mother's testimony, (4) improperly determining plaintiff's residual functional capacity (RFC), (5) finding plaintiff can perform past relevant work, (6) relying on testimony of the vocational expert (VE), and (7) ignoring probative evidence that undermined the VE's testimony.

I. Listing 12.05C

The ALJ concluded that "Listing 12.05C is not the appropriate Listing section," based on his interpretation of medical expert (ME) testimony and his finding that plaintiff is "functionally adaptive in her skills." (Tr. 242-43). The ALJ then determined that plaintiff has borderline intellectual functioning and asthma, impairments which do not meet or medically equal a listed impairment. (Tr. 244-45). Plaintiff contends her impairments meet or equal Listing 12.05C for mental retardation.

An impairment meets this listing if it satisfies the diagnostic description in the introductory paragraph of Listing 12.05 and the criteria of paragraph C. 20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.00. Listing 12.05 provides in part,

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the [following] requirements [] are satisfied.

2 - ORDER

> * * *
> C. A valid verbal, performance, or full scale IQ of 60
> through 70 and a physical or other mental impairment
> imposing an additional and significant work-related
> limitation of function[.]

Plaintiff argues that she meets the listing because her IQ scores are below 70, and her asthma has more than slight or minimal effect on her ability to work. She further argues that the ALJ improperly favored the opinion of the ME over Dr. Leland, who examined plaintiff in 2002 and diagnosed mild mental retardation. On the latter point, Dr. Leland's diagnosis is a statement that plaintiff meets the criteria of the Diagnostic and Statistical Manual of Mental Disorders, IV (1994), and not a conclusion that plaintiff meets the criteria of Listing 12.05C. The ALJ acknowledged IQ test scores in the record within the range of the listing (60-70), but he did not determine plaintiff's IQ for purposes of the listing.[2]

Instead, the ALJ apparently found that plaintiff's condition does not satisfy the "deficits in adaptive functioning" criterion

---

[2]The record contains WISC-R scores from testing in 1982, 1984 and 1989, WAIS-R scores from 1995 and 1996, and WAIS-III scores from Dr. Leland's 2002 report. (Tr. 150, 151, 154, 169, 175, 348). The 1989 administration of the WISC-R yielded a verbal IQ score of 66. The 2002 WAIS-III test yielded a verbal IQ score of 66, and a full scale score of 69. All other Wechsler series scores are above 70 (72-84 verbal, 78-90 performance, and 76-82 full scale). A regulation provides that the lowest score on a valid test should be used. 20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.00D(6)(c). The regulation is silent as to which score should be used when multiple tests have been given. Miles v. Barnhart, 374 F.3d 694, 700 (8th Cir. 2004).

3 - ORDER

of the diagnostic description in the introductory paragraph to Listing 12.05. (Tr. 242-44) ("[Listing 12.05] is not the appropriate Listing section . . ." "[T]he claimant has been seen as being functionally adaptive in her skills." "The claimant does not fit the basic definition of mental retardation, which . . . is not a conclusion to be based solely on an IQ score.").

The ALJ's own assessment of plaintiff's RFC includes deficits in adaptive functioning.[3]

> She is precluded from tasks demanding more than simple, repetitive, hands-on work. As part of this, she should not work at such things as report generating tasks where academic skills such as reading and writing are involved. She is intolerant of rapid changes in tasks and would need to keep things routine. She is limited from ongoing interaction and direct service with the public and limited from traveling in unfamiliar areas as part of her job.

(Tr. 244). Substantial evidence therefore does not support the conclusion that plaintiff does not meet the diagnostic criterion of deficits in adaptive functioning. The court expresses no opinion as to whether plaintiff meets other diagnostic criteria of the introductory paragraph of Listing 12.05, or the severity criteria of paragraph C.

II. Lay Testimony

A. Plaintiff's Testimony

Plaintiff next argues that the ALJ failed to state adequate

---

[3]There is no dispute that these deficits are supported by substantial evidence. The fight in this case is over whether plaintiff is more limited than determined by the ALJ.

4 - ORDER

reasons to reject her testimony. The ALJ found "little evidentiary value in either the witness or claimant testimony," for the reason that "the medical and psychological evidence simply does not support the level of functional limitations alleged by the claimant and/or her mother."[4] (Tr. 241) While relevant, lack of objective medical evidence supporting the severity of symptom alleged is not a sufficient reason to reject a claimant's symptom testimony where there is no evidence of malingering and objective medical evidence supports the existence of an impairment reasonably expected to cause some degree of the symptom. See Rollins v. Massanari, 26 F.3d 853, 857 (9th Cir. 2001). Plaintiff faults the ALJ for failing to assess whether plaintiff's symptoms are reasonably related to her impairments and failing to apply the credibility factors set forth in SSR 96-7p. She contends her testimony must be credited as true.

Except for noting that it is not established that plaintiff's alleged practice of taking daily naps is the result of medical necessity, the ALJ did not determine which of plaintiff's symptoms result from medically determinable impairments, and which do not. A regulation contemplates that the ALJ might consider the opinion of a medical advisor on this

---

[4]Although he found plaintiff's testimony of little evidentiary value, the ALJ apparently accepted the testimony regarding plaintiff' activities of daily living and functional limitations to the extent the testimony is consistent with plaintiff's RFC.

5 - ORDER

issue. 20 C.F.R. § 416.929(b). Plaintiff, however, does not demonstrate in her papers that her symptoms result from medically determined impairments that could reasonably be expected to produce the symptoms alleged. The court therefore does not find that the ALJ had to accept or state clear and convincing reasons to reject plaintiff's symptom testimony (see Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)), or that the ALJ properly rejected plaintiff's testimony.

B. Plaintiff's Mother's Testimony

Plaintiff argues that the ALJ improperly rejected her mother's testimony. An ALJ may properly reject lay witness testimony by stating specific reasons germane to the witness. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). As noted, the ALJ found plaintiff's mother's testimony regarding the level of plaintiff's functional limitations unsupported by medical and psychological evidence. He further found the testimony of little evidentiary value based on (1) the mother's financial interest in seeing her daughter secure benefits and become more independent, and (2) inconsistencies between the mother's observations and plaintiff's "recent testimony and reports of [] daily activities and abilities to take care of [plaintiff's] child and fiancé without assistance of the claimant's mother." (Tr. 241).

The mother's testimony as recounted by the ALJ primarily concerns the mother's observations of plaintiff (plaintiff had

memory problems, was depressed, cried and slept a lot, was unable to care for her child, could not read well, could not make change, had a speech impediment since age three, fatigued easily, required daily naps, and had worsening asthma). (Tr. 241). Many of the observations are consistent with the ALJ's determination of plaintiff's RFC. Moreover, at the same time he found the mother's testimony of little evidentiary value, the ALJ paradoxically wrote that the testimony is likely based upon the mother's own observations, and "might be found to be an accurate portrayal of the witness's perception." (Tr. 241). Notably, the ALJ did not find that the mother's testimony conflicts with the medical record, which is an adequate reason to reject lay testimony. See Lewis v. Apfel, 236 F.3d 503, 510 (9th Cir. 2001) (ALJ may reject lay testimony in conflict with medical evidence).

Because the decision and briefing do not clearly establish which of plaintiff's symptoms result from medically determinable symptoms, it is also prudent to reserve judgment at this time regarding the credibility of plaintiff's mother's testimony. The court does take the opportunity to note that the financial bias found by the ALJ arises from the fact that the witness is plaintiff's mother, and is therefore not a permissible reason to reject her testimony. See Regennitter v. Commissioner, 166 F.3d 1294, 1298 (9th Cir. 1999)(holding ALJ could not reject mother's testimony for bias, notwithstanding that mother testified she was

claimant's sole source of support).

Based on the foregoing, the court cannot determine that the ALJ's RFC and step 4 and 5 determinations are supported by substantial evidence. This matter must be remanded. The court is not pleased to remand a ten year old application for further administrative proceedings. Further proceedings are necessary, however, in order to determine whether plaintiff meets or equals Listing 12.05C, which of plaintiff's symptoms can reasonably be expected to result from a medically determinable impairment, and for a new disability determination consistent with this opinion.

## Conclusion

The decision of the Commissioner is reversed and remanded for further proceedings.

IT IS SO ORDERED.

DATED this 25th day of May, 2005.

_____
United States District Judge